## MINERVA J. FLINN v. LEWIS D. MANNING.

A. was father-in-law of B., and associated with him as a partner in the practice of law, and while that relation existed, they acquired a house and lot by way of compensation for legal services rendered by the firm, the title of which was taken to A., but B. went into the possession. A. died, and his widow claimed the whole under the will; and B. also claimed the whole, viz: one-half on the ground that it had been paid for by the firm, and the other half by a verbal contract and transfer made by A. to B. while B. was in possession as tenant in common.

*Held*, that B., as tenant in common of an undivided half of the house and lot, could not acquire a title to the other half by a parol agreement with his co-tenant, there being no such part performance, by change of possession or otherwise, as to take the case out of the statute of frauds.

RESERVED FROM SPECIAL TERM.—This is a suit by Mrs. Flinn, widow and devisee of Judge Jacob Flinn, deceased, to recover a house and lot from Lewis D. Manning, who is in possession of it, claiming title. She alleges that the property belongs to her late husband, and by his will was conveyed to her.

The defendant denies the title of the plaintiff, and also avers that the property was acquired from Fox and wife to Jacob Flinn, for legal services rendered and to be rendered in certain cases; that about that time the defendant became the partner in business of Flinn, and shared in the labor and responsibility of the business, and in consideration thereof Judge Flinn agreed that Manning should share with him equally in the ownership of the property; that the defendant went into immediate possession of the property with the consent of Judge Flinn, and has remained in exclusive possession from that time, viz: 1861, to the present time; that the defendant also became the son-in-law of Judge Flinn by marrying his oldest daughter, and that sometime in 1865, Flinn gave him the other half of the property as his own. But no writings or title papers were executed.

Such are the general features of the case as shown by the pleadings. There are sundry minor circumstances in evidence. It is stated by several witnesses that Flinn said that the property belonged to Manning; that he regretted that Manning was not doing as well as he desired him to do, but that he, Flinn, had provided for him and his wife a home.

*Warden*, for plaintiff.

*Okey*, for defendant.

TAFT, J.  It is claimed by the plaintiff that Judge Flinn never actually gave the property to the defendant, though he permitted defendant and wife to occupy it. It is also claimed that, as Manning was in possession when this verbal transfer of the property, in 1865, is said to have been made, the statute of frauds is a complete bar to a recovery, within the principle of the cases of *Armstrong* v. *Kattenhorn*, 11 O. R. 265 ; *Crawford* v. *Wick*, 18 O. S. 190.

By the statute of frauds a parol contract for an interest in real estate can not be enforced. But where there has been a part performance by a change of possession, in pursuance of such parol contract, a court of equity will interfere and enforce the performance of the contract, to prevent what would be a fraud in the party who seeks to escape such a contract.

The principle of the cases cited, viz: *Armstrong* v. *Kattenhorn, Crawford* v. *Wick*, is that where the party who makes a parol contract for land is already in possession, the rule can not apply, and the statute of frauds operates to prevent the enforcement of the contract.

As Manning was in possession of an undivided half of this property, by the sufferance of Flinn, in 1865, when it is claimed that Manning, by a parol contract with Flinn, acquired title to that half, we think that the principle of the case of *Armstrong* v. *Kattenhorn* applies, and that this defense is valid as to that undivided half which the defendant claims to have acquired in 1865 by a parol contract.

The evidence satisfies us that Flinn and Manning were tenants in common in equity, however the title may stand on the record. From the evidence before us, as well as the uncontradicted statements contained in the elaborate briefs, we are satisfied that the plaintiff is entitled to a decree for an undivided half of the property, and that the defendant should be quieted in his title to the other undivided half; and that the costs of the suit and cross-suit should be paid equally by both.